See also D.C., 224 F.Supp. 951.

**Rolf T. MICHELSEN, Plaintiff,**

**v.**

**Joseph M. BRUSH, Defendant.**

**No. 63 C 352.**

United States District Court
E. D. New York.

Sept. 21, 1964.

Monroe J. Cahn, New York City, for plaintiff.

Matthew J. Shevlin, New York City (Edwin K. Reid and Zock, Petrie, Sheneman & Reid, New York City, of counsel), for defendant.

DOOLING, District Judge.

Plaintiff earlier obtained an order of attachment and had it served *inter alios*, on the defendant himself. Later on plaintiff obtained an order under N.Y. CPLR § 6220 to examine defendant in aid of attachment. Defendant has appeared for that examination but has refused to produce for plaintiff's inspection the articles of his law partnership with his son, although disclosing the text of the parts of it that he considered relevant, and has refused to answer questions directed to determining (i) what personalty he owned, (ii) whether he owned an automobile, (iii) whether he owned [corporate] stocks, (iv) whether he owned bonds, (v) whether he had a bank account, (vi) whether he owned any jewelry, (vii) whether he had any policies insuring his life or (viii) the life of anyone else, and (ix) whether anyone was indebted to him.

The grounds of the refusal to answer are:

A. The defendant is not a "garnishee" [N.Y. CPLR §§ 105(h), 5201(c) (3)] because the term by statute excludes the defendant himself;

B. No one except a garnishee can be interrogated under N.Y. CPLR § 6220;

C. Interrogation and enforcement procedures must be limited to property in New York State and cannot extend to tangible or intangible property outside the state merely because the court happens to have jurisdiction over the person of the defendant.

A. Defendant is not a "garnishee." The statute designedly excludes the defendant himself from the embrace of the term. Partnership Law, § 54, subd. 1 McKinney's Consol.Laws, c. 39, does not affect the point. The inquiry and enforcement orders there authorized would not operate to change the meaning of Article 62 terms but to supplement, when "the circumstances of the case * * * require," the procedures of Article 62.

B. Interrogation under CPLR § 6220 is not, as C.P.A. § 919 was, limited to interrogating those persons other than the defendant required to furnish a "certificate" (C.P.A. § 918) or "statement" (CPLR § 6219) of what they owe to or hold for defendant.

■ Defendant must as defendant, and the younger Brush must as garnishee, appear and submit to examination. The examination of defendant as defendant may properly extend to topics on which it is just to anticipate that defendant will be informed even though a garnishee might be supposed to be as well or better informed. The same is true, in converse, of interrogation of a garnishee. The topics of inquiry of defendant and garnishee are not mutually exclusive.

C. The inquiry authorized by Section 6220 is devoid of expressed territorial limitation. As it befalls in this case, defendant, although a non-resident, is subject to the exercise of the personal jurisdiction of the New York Courts and, in consequence, of this Court in the present type of case, an action arising out of defendant's practice of his profession in New York (CPLR §§ 302(a) (1), (b), 308, subd. 1, 313; F.R.Civ.P. 4(e)). So, it is easy to visualize an actual power to coerce the bringing into this state of property under defendant's control that is normally and properly "located" outside the state. That hardly settles the question of statutory purpose, however, for New York may well be content with little, although the reach of its attachment process has long been expansive. One might argue, too, that the inquiry of CPLR § 6220 ought to be narrower than that in proceedings to enforce final judgment (CPLR § 5223), for there the inquiry might well embrace property not conceivably executionable from New York but readily subject to seizure in a suit brought elsewhere under the New York judgment. The inquiry would relate to satisfying the judgment by any and all

means and would not be limited to locating what is executionable in New York.

Earlier, New York appears to have extended seizure by attachment to all tangible and intangible interests that could be made to respond directly to the sheriff's levy or suit. There were in the case of intangibles, indications that where (as is most usual) the defendant-in-attachment was not subject to the Court's personal jurisdiction, certain narrow classes of foreign intangibles could not be reached (See United States v. First Nat'l City Bank, 2d Cir. 1963, 321 F.2d 14, 19–22), nor—in consequence—inquired into under C.P.A. § 919 (Clinton Trust Co. v. C. Azucarera Central Mabay S. A., N.Y.Co. 1939, 172 Misc. 148, 14 N.Y.S.2d 743, 745, aff'd. 1st Dept. 1939, 258 App.Div. 781, 15 N.Y.S.2d 721; Stine v. Greene, 1st Dept. 1901, 65 App.Div. 221, 72 N.Y. S. 729, 731); but, generally, the test was whether the person served with the levy was subject to the Court's personal jurisdiction, and *situs* was unimportant. Cf. Wheat v. First Nat'l City Bank, 41 Misc. 2d 723, 246 N.Y.S.2d 536, 539. Note Morris Plan Indus. Bank of N. Y. v. Gunning, 1946, 295 N.Y. 324, 67 N.E.2d 510. So, here, the coincidence of defendant's amenability to personal service with his liability to the process of attachment might appear to extend the range of attachment to all defendant's property since he could in theory be coerced to bring in even his properly foreign bank accounts, if any.

The new statute appears generally to continue if not widen the reach of attachment process. The property subject to attachment (CPLR § 6202) is all executionable property as decribed in CPLR § 5201, that is: (a) debts whether incurred outside or in the state and whether due from or to a non-resident or resident, and (b) any non-exempt assignable or transferable property interest. As in the past, there appear to be three classes of property from the viewpoint of mechanical collection procedures: *first,* money or other personal property in the "possession or custody" of the defendant (CPLR §§ 5201(b), (c) (4), 5225 (a)); *second,* money or other personal property in the "possession or custody" of a third person (CPLR §§ 5201(b), (c) (4), 5225(b)) and *third,* debts and other intangible rights against third persons (CPLR §§ 5201(a), (b), (c) (1), (2), (3), 5227). The *second* class admits also of the defendant's or judgment debtor's having "an interest" in money or other property in "the possession or custody" of a third person, in which case the interest is cross-classified as property not "capable of delivery" See CPLR § 5232). Levy under execution, then, is effected by service on a garnishee (that is, a person other than the defendant or judgment debtor) in the case of the *second* and *third* classes of property by the sheriff's either serving the third persons with a copy of the execution or by taking the property (which may be currency), if capable of delivery, from their custody into the sheriff's if that can be done without interfering with a third-party right (CPLR § 5232). In the case of the *first* class—property in "the possession or custody" of the defendant—nothing except seizure appears to be contemplated (CP LR § 5232(b)). Section 5225, dealing with orders enforcing cred⁻ˈːors' rights against the defendant and third persons having money or other property in their custody, appears, in its context to be restricted to currency and other tangible property capable of delivery (including, no doubt, the tangibly embodied rights described in § 5201(c) (4)), and cognate things such as policies of insurance, perhaps, leaving to § 5227 the enforcement of debts; subdivision (c) of § 5225 would seem to be subordinate to the rest of the section and to embrace only orders to implement action under subdivisions (a) and (b). Such was the former reading of the statutory scheme, and the statutory language seems to preserve it. See, e. g., Bartley v. Bartley, 2d Dept. 1938, 255 App.Div. 992, 8 N.Y.S.2d 327. The contrary note in the Third Report to the Legislature appears inappreciative of the language and background

of the statute and overvalues the effect of the deletion from the section of the "capable of delivery" language preserved in § 5232.

 Hence, it appears that the attachment statute maintains its wide reach but that the defendant himself cannot be the pivot by which pure intangibles—e. g., an out of state bank deposit—can be reached, simply because, advisedly or not, the statutory scheme requires service upon a garnishee to reach pure intangibles; the defendant is subject to service only with respect to what is "in his possession or custody" and that has come to mean things capable of delivery, tangibles, including tangibly embodied intangibles.

The attachment-levy section bears out the analysis (CPLR § 6214). It contemplates service of the attachment order on the defendant only with respect to property "in the defendant's possession or custody" (§ 6214(a)) and, hence, the duty "forthwith" to "transfer or deliver all such property" extends only to property of the tangible kinds capable of delivery that is in defendant's "possession or custody" (§ 6214(b)).

But that does not dilute the defendant's duty of disclosure under § 6220. He must respond to inquiry and he may not by assertions of irrelevancy, or by refusing to identify property on the ground of its asserted extraterritoriality, prevent the creation of an objective and real record of evidence.

Accordingly, on the application of plaintiff to compel answers during examination in aid of attachment under F.R. Civ.P. 64 and CPLR § 6220, and on defendant's objections, it is

Ordered that defendant answer the questions propounded to him at pages 7 and 8 of the transcript of the proceedings of September 11, 1964, and any further proper questions on the same or cognate topics that are addressed to ascertain the nature, extent and location of property of defendant upon which the process of attachment herein may be extended; the examination shall proceed at such time

and place as counsel agree upon and, failing agreement, shall proceed at Room 122, United States Court House, Eastern District of New York, at 10:00 A.M. on Thursday, September 24, 1964.